**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

IN RE FRANCIS P. TAKES and MARY
L. TAKES,

        Debtors.

No. 05-CV-71-LRR

**ORDER**

LASALLE BANK, N.A. and VALLEY
BANK,

        Appellants,

vs.

FRANCES P. TAKES and MARY L.
TAKES,

        Appellees.

_____

*TABLE OF CONTENTS*

*I.*    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

*II.*   *PRINCIPLES OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

*III.*  *THE FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

    *A.*    *Residency Agreement* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

    *B.*    *Debt* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**

    *C.*    *Purchase Agreement* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**

    *D.*    *Bankruptcy* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**

*IV.*  *THE ISSUE* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**

**V.    THE MERITS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**

    **A.    Federal Bankruptcy Law**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**

    **B.    Iowa Homestead Law**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**

        **1.    Iowa Code § 561.16**  . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**

        **2.    Iowa Code § 561.21(1)**  . . . . . . . . . . . . . . . . . . . . . . . . **8**

        **3.    Iowa Code § 561.20**  . . . . . . . . . . . . . . . . . . . . . . . . . **16**

**VI.   CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **22**

## I.  INTRODUCTION

This is an appeal from final judgment of the United States Bankruptcy Court for the Northern District of Iowa.  The Bankruptcy Court ruled Frank and Mary Lu Takes, two debtors, properly claimed a homestead exemption for their townhome.  LaSalle Bank, N.A. and Valley Bank, the Takes' creditors, appeal.  Because the Takes purchased the townhome with nonexempt funds after they incurred their debts to the creditors, the Bankruptcy Court's ruling shall be reversed and the case shall be remanded for further proceedings consistent with this order.

## II.  PRINCIPLES OF REVIEW

A district court has jurisdiction to hear appeals from final judgments, orders and decrees of bankruptcy judges.  28 U.S.C. § 158(a).  The district court must review a bankruptcy court's factual findings for clear error and its legal conclusions de novo.  *In re Apex Oil Co.*, 406 F.3d 538, 541 (8th Cir. 2005).

## III.  THE FACTS[1]

### A.  Residency Agreement

In 1994, Frank and Mary Lu Takes signed a "Residency Agreement" with Garnett

---

[1] The facts are not in dispute.

Place Townhomes, L.C. ("GPT"). GPT operated Garnett Place, an independent-living retirement community in Cedar Rapids, Iowa. In exchange for the right to live in a townhome at Garnett Place,[2] the Takes agreed to pay GPT a monthly fee and a sizeable entrance fee.

The monthly fee was initially $300 per month. The monthly fee was due on the first of the month and was not refundable. GPT reserved the right to change the monthly fee with thirty days notice.

The entrance fee was $110,000.[3] The entrance fee was refundable but subject to a set of mandatory deductions. When the Residency Agreement terminated, GPT would refund to the Takes the entrance fee it was able to negotiate with the new resident of the townhome minus a marketing fee and a remodel fee. The Residency Agreement set the marketing fee at 5% of the amount of the new resident's entrance fee. The remodel fee depended on how long the Takes lived in the townhome but could not exceed 20% of the new resident's entrance fee.[4]

---

[2] The address of the Takes' townhome is 142 35th Street Drive SE, Unit #4.

[3] On the same day the Takes and GPT signed the Residency Agreement, they also signed a separate agreement [hereinafter "Entrance Fee Waiver"] concerning the $110,000 entrance fee. In the Entrance Fee Waiver, GPT agreed to waive the Takes' $110,000 entrance fee. In exchange, the Takes agreed to (1) continue to share with GPT the "expertise . . . they developed over the years that continue to make this project successful"; (2) permit GPT to show their townhome to prospective residents as a model unit; (3) give prospective residents tours of other townhomes at Garnett Place; and (4) sign a mortgage for the project.

[4] If the Takes lived in the townhome for a year or less, the remodel fee was 7% of the new resident's entrance fee. For each additional year of residency up to the fifth year the remodel fee increased an additional 2% of the new resident's entrance fee. For each subsequent year up to the tenth year the remodel fee increased an additional 1% of the new

(continued...)

The term of the Residency Agreement was "for the life of the last living Resident unless otherwise terminated as provided . . . ." The Takes could terminate the Residency Agreement for any reason with thirty days notice. GPT could terminate the Residency Agreement if the Takes did not pay their monthly fee, engaged in improper conduct or became physically or mentally disabled.

When the Residency Agreement terminated, GPT agreed to use "its best efforts" to find a new resident. GPT retained "sole discretion" to determine who the new resident would be and the amount of the new entrance fee. If GPT could not find a new resident within two years, it agreed to "execute a note payable to [the Takes] in an amount equal to seventy-five percent . . . of the [Takes' entrance fee]." GPT agreed to pay the principal of the note to the resident when it found a new resident or in fifteen years, whichever occurred first.[5]

## B. Debt

In 1999, the Takes personally guaranteed a loan to Clover Ridge Place, L.C. [hereinafter "Clover Ridge"]. Clover Ridge eventually defaulted on the loan. On January 21, 2004, two banks, Valley Bank and LaSalle Bank, N.A. [hereinafter "the Banks"], obtained a deficiency judgment against the Takes in state district court. The amount of the judgment was almost $1 million.

---

[4](...continued)
resident's entrance fee. For example, if the new resident agreed to pay an entrance fee of $100,000 in ten years, GPT would pay the Takes $75,000.

[5] The court notes Frank Takes signed the Residency Agreement and the Entrance Fee Waiver on behalf of GPT as its "Managing Member." The court also notes there is no evidence in the record that GPT waived an entrance fee for any other new residents. Because there are no allegations to the contrary, the court assumes these transactions are valid.

## C. Purchase Agreement

On February 28, 2004, GPT agreed to sell the Takes their townhome. The terms are set forth in a written purchase agreement [hereinafter the "Purchase Agreement"].[6] In the Purchase Agreement, GPT agreed to sell the Takes their townhome for $177,300. GPT refunded the Takes their $110,000 entrance fee and applied it to the purchase price. GPT apparently did not charge the Takes a marketing fee or a remodel fee. GPT also credited the Takes 1.5% "appreciation" per annum on the $110,000 entrance fee, for a total credit of $125,773. The Takes gave GPT a check for the balance—$51,527. GPT signed over a warranty deed on February 27, 2004,[7] which was recorded on March 5, 2004.

## D. Bankruptcy

On October 13, 2004, the Takes filed for Chapter 7 bankruptcy. The Takes listed just over $225,000 in assets and nearly $14 million in liabilities. The Takes' primary asset was their townhome, valued at $177,300. The Takes claimed their townhome was protected from their creditors (i.e., the townhome was "exempt" property) because it was their homestead.

The Banks objected. The Banks claimed the townhome was not exempt because the Takes had purchased the property after they cosigned the loan for Clover Ridge.

On March 8, 2005, the Bankruptcy Court ruled the Takes properly claimed the townhome exempt from the bankruptcy estate and denied the Banks' objection. *See generally In re Takes*, No. 04-04020, 2005 WL 579696 (Bankr. N.D. Iowa Mar. 8, 2005).

---

[6] Again, Frank Takes signed the Purchase Agreement on behalf of GPT as its "Managing Member." There is no evidence in the record that GPT sold townhomes to any other residents.

[7] The warranty deed was signed a day before the Purchase Agreement was signed.

On April 15, 2005, the Banks filed this appeal.

The court heard oral argument on the appeal on December 1, 2005. Richard Davidson represented the Banks. Janet Hong represented the Takes.

## IV. THE ISSUE

The sole issue in this appeal is a legal one: whether the Bankruptcy Court erred when it denied the Banks' objection to the Takes' claimed homestead exemption.

## V. THE MERITS

### A. Federal Bankruptcy Law

The general rule is that "all property in which the debtor has a legal or equitable interest becomes property of the bankruptcy estate" and is therefore within the reach of creditors. *In re Thompson*, 884 F.2d 1100, 1101-02 (8th Cir. 1989). Section 522 of the Bankruptcy Act, however, permits a debtor to claim exemptions. *See* 11 U.S.C. § 522(l). Title 11, United States Code, section 522(b) governs the exemption process. Section 522(b) lets debtors choose a set of federal exemptions listed in Title 11, United States Code, section 522(d) or the applicable state's exemptions, unless the state has "opted out" of the scheme and expressly limited debtors to the state law exemptions. 11 U.S.C. § 522(b); *see also In re Thompson*, 750 F.2d 628, 630 (8th Cir. 1984). Iowa has "opted out." Iowa Code § 627.10 (2003)[8]; *see also In re Eilbert*, 162 F.3d 523, 525 (8th Cir. 1998) (recognizing Iowa has opted out); *Braunger v. Karrer*, 563 N.W.2d 1, 2 (Iowa

---

[8] Iowa Code § 627.10 states:

> A debtor to whom the law of this state applies on the date of filing of a petition in bankruptcy is not entitled to elect to exempt from property of the bankruptcy estate the property that is specified in 11 U.S.C. § 522(d) (1979). This section is enacted for the purpose set forth in 11 U.S.C. § 522(b)(1) (1979).

1997) (same). Therefore, Iowa law determines what is exempt in this case. *Eilbert*, 162 F.3d at 525; *In re Huebner*, 986 F.2d 1222, 1224 (8th Cir. 1993); *Thompson*, 750 F.2d at 630. The Banks bear the burden to prove the Takes' townhome is not exempt from the bankruptcy estate. F. Bankr. R. 4003(c); *see also In re Stenzel*, 301 F.3d 945, 947 (8th Cir. 2002) (same); *Olsen v. Lohman*, 13 N.W.2d 332, 339-40 (Iowa 1944) (same).

## B. Iowa Homestead Law

### 1. Iowa Code § 561.16

In Iowa, "[t]he homestead of every person is exempt from judicial sale where there is no special declaration of statute to the contrary." Iowa Code § 561.16. The purpose of the law is "to promote the stability and welfare of the state by encouraging property ownership and independence on the part of the citizen, and by preserving a home where the family may be sheltered and live beyond the reach of economic misfortune." *In re Estate of Tolson*, 690 N.W.2d 680, 682 (Iowa 2005) (citation and internal quotation marks omitted); *accord In re Estate of McClain*, 262 N.W. 666, 669 (Iowa 1935) ("The purpose is to provide a margin of safety to the family, not alone for the benefit of the family, but for the public welfare and social benefit which accrues to the state by having families secure in their homes."). The homestead exemption must be construed broadly and liberally. *See Tolson*, 690 N.W.2d at 682; *Frudden Lumber Co. v. Clifton,* 183 N.W.2d 201, 203 (Iowa 1971); *Poffinbarger v. Adm'r of Poffinbarger's Estate*, 221 N.W. 550, 551 (Iowa 1928); *Charless v. Lamberson*, 1 Clarke 435, 441 (Iowa 1855); *see also Charter v. Thomas*, 292 N.W. 842, 843 (Iowa 1940) (noting the Iowa Supreme Court's "holdings involving homesteads have strongly leaned, as they should, to the protection of the homestead estate"). That said, the homestead exemption is a creature of statute, and, therefore, a "court may not by interpretation or construction unduly extend its scope." *Floyd County v. Wolfe*, 117 N.W. 32, 33 (Iowa 1908); *see also Iowa Methodist Hosp. v.*

*Long,* 12 N.W.2d 171, 175 (Iowa 1944) (same); *Charless,* 1 Clarke at 441 (same).

## 2. Iowa Code § 561.21(1)

Iowa Code section 561.21 carves out exceptions to Iowa Code section 561.16. Specifically, Iowa Code section 561.21(1) provides that a homestead may be sold to satisfy debts "contracted prior to its acquisition." Iowa Code § 561.21(1). The pivotal question in this case is whether the Takes' debt, which was incurred in 1999,[9] was "contracted prior to . . . acquisition" of their homestead. The Banks claim the Takes' townhome is not exempt because the Takes "acquired" their current homestead when they purchased the townhome in 2004. In response, the Takes claim they acquired their homestead in 1994 when they moved into the townhome under the Residency Agreement.

The Banks rely upon three cases to support their argument: *Wertz v. Merritt*, 39 N.W. 103 (Iowa 1888); *Kramer v. Hofmann*, 257 N.W. 361 (Iowa 1934), *overruled on other grounds in In re Estate of Ferris*, 14 N.W.2d 889 (Iowa 1944); and *Reusch v. Schafer*, 41 N.W.2d 651 (Iowa 1950). *Wertz* is the seminal case. The debtor leased forty acres of land from his father for the nearly twenty-year period immediately preceding his father's death. *Wertz*, 39 N.W. at 104. When the debtor's father died intestate, the debtor inherited fee simple title to most of the land he formerly leased. *Id.* at 103. The debtor claimed his homestead right in the inherited tract of land preceded his father's death; he argued his homestead was acquired when he first occupied the land as a tenant twenty years earlier. *Id.* at 104. The Iowa Supreme Court disagreed. *Id.* The court held the inherited tract of land was subject to a debt which was incurred after the debtor occupied

---

[9] The date the debt was incurred controls, not the date the creditor obtained judgment on the debt. *Kramer v. Hofmann*, 257 N.W. 361, 364-65 (Iowa 1934); *Bills v. Mason*, 42 Iowa 329, 332 (1876); *see also In re Allen*, 301 B.R. 55, 59 (Bankr. S.D. Iowa 2003) (same).

the land under the lease but before he inherited the land. *Id.* In pertinent part, the court wrote:

> [I]t may . . . be conceded that a homestead right may be acquired in a leasehold estate. But [the debtor] does not base his claim upon any leasehold interest. . . . .[H]is present right is not derived from any interest he had in the land prior to [his father's death]. . . . [U]nless the present homestead right is a continuation of the former one, the land is subject to the [creditor's judgment]. We know of no rule of law which would justify us in holding that there was such a continuation of the homestead right. The leasehold right was entirely independent of that now held. The present right did not in any manner flow from the former. While it is true that a part of the land formerly occupied by [the debtor] was allotted to him . . . , . . . he had no legal right to compel such allotment. . . . . Prior to the death of his father, [the debtor] had no vested right in anything except the right to occupy the land by the year, and possibly the right to compensation for improvements. We therefore conclude that the land allotted . . . was subject to the payment of the judgment in favor of [the creditor] . . . .

*Id.* at 104-05.

The Iowa Supreme Court followed *Wertz* in *Kramer* and *Reusch*. In *Kramer*, the debtor rented a farm from his mother. *Kramer*, 257 N.W. at 363. At the time of his mother's death, the debtor obtained title to the farm as a cotenant with his siblings. *Id.* The Iowa Supreme Court held the debtor's present homestead right in the farm could not have accrued before his mother's death. *Id.* Therefore, the homestead was not exempt from a debt incurred before his mother's death but after he moved onto the property under the lease. *Id.* at 364-65. The Iowa Supreme Court wrote:

> While there may be a homestead right in a leasehold, it is apparent in this case that [the debtor] is not claiming such right under a leasehold but as a cotenant. It is equally apparent that

> his occupation of the property up to the time of his mother's
> death was as a tenant of his mother under a lease. Under these
> circumstances, therefore, any homestead right could not have
> accrued to him prior to the death of the mother . . . . The
> entire judgment . . . was . . . based upon an indebtedness
> contracted prior to the accrual of any right of homestead.
> Under [what is now Iowa Code section 561.21], the homestead
> is, of course, liable for debts antedating its acquisition, and
> when this debt was reduced to judgment . . . , such judgment
> became a lien upon all the interest of [the debtor], including
> any homestead right which he might have in the real estate.

*Id.*

In *Reusch*, a father deeded real estate to his two children but remained in possession of the property through a lease. *Reusch*, 41 N.W.2d at 657-58. The children later deeded the property back to their parents but not before the parents incurred a debt. *Id.* The Iowa Supreme Court held the parents

> had a homestead right under their lease only, but not in the
> real property itself for they did not own it. When it was
> conveyed back to them the new homestead right which they
> thereby acquired became instantly subject to the lien of
> plaintiff's antecedent judgment.

*Id.* at 658.

*Wertz*, *Kramer* and *Reusch* make clear that, when one occupies property under a lease, incurs a debt and then receives fee simple title to the property, the present homestead "accrues" for purposes of Iowa Code section 561.21(1) at the time fee simple title is received. The property is thus subject to the antecedent debt. The fee simple homestead right and the prior leasehold homestead right are distinct and separate. In other words, the debtor cannot claim his present fee simple homestead right accrued before he obtained it simply because he happened to have a prior leasehold interest in the same

property.

The court agrees with the Banks that *Wertz*, *Kramer*, and *Reusch* are applicable in this case. Like the debtors in those cases, the Takes leased the property, incurred a debt, and then received fee simple title to the property when they purchased it from GPT. The Takes' present homestead right in the property accrued when they purchased the property in 2004, not when they moved in under the lease in 1994. The Takes' debt to the Banks in 1999 antedates acquisition of their present homestead rights, and thus the townhome is nonexempt under Iowa Code sections 561.16 and 561.21.

The Takes maintain *Wertz*, *Kramer*, and *Reusch* are distinguishable because the Residency Agreement afforded them "some form of equitable title to the townhome property in 1994." The Takes point out that they "moved to acquire full legal title . . . as soon as the property became available." The Purchase Agreement was simply "the final step in what was clearly a continuation of their same use and occupancy of the townhome and therefore a continuation of their homestead rights." Under such circumstances, the Takes claim the homestead right stretches back to the inception of the leasehold.

To support their position, the Takes rely on *Lennert v. Cross*, 241 N.W. 787 (Iowa 1932). In *Lennert*, a father promised to leave his son a tract of land in his will in exchange for the payment of "rent" of $1 an acre per year. *Lennert*, 241 N.W. at 788. The son took possession immediately. *Id.* He paid the annual "rents" for a number of years. *Id.* He also incurred a debt to a third-party. *Id.* After the father died, the son received title to the land through his father's will. *Id.* The Iowa Supreme Court held the son's homestead right in the land accrued when he originally took possession, not when formal legal title passed. *Id.* at 789. The Iowa Supreme Court wrote:

> [T]here can be no doubt that the father intended to give the land in controversy to the plaintiff with a reservation of the right to receive $1 per acre per year . . . . The father evidently

> retained the legal title until his death as he retained the right to the $1 per acre which was called rent. The rent, however, was not the rent reserved by a landlord on a demise of premises for years. . . . [The son's] incipient title has become consummate. His title has always been recognized by the parties in interest. His present title began when he took possession under the gift. . . . His present title is a continuation and consummation of the interest which he had at the time when he first made his home upon the land. His homestead exemption has been continuous and unbroken and dates from the time of his original occupancy as his home.

*Id.*; *see also Rutledge v. Wright*, 171 N.W. 28, 29-30 (Iowa 1919) (holding homestead right dated back to possession where there was a contract to purchase the property antedating the debt; debtor had equitable title); *Foster v. Rice*, 101 N.W. 771, 772 (Iowa 1904) (similar).

The Takes are correct insofar as they assert that one need not have fee simple title to property to have homestead rights in it. *See, e.g., Livasy v. State Bank of Redfield*, 170 N.W. 756, 756 (Iowa 1919). A homestead may exist in a leasehold or an equitable estate. *Id.* For example, if a debtor agrees to purchase a home on a real estate contract and incurs a debt before he pays it off in full, "the general rule is . . . that one holding under contract is entitled to a homestead exemption except as to the liability under the contract for the unpaid purchase money." *Utley v. Boone*, 299 N.W. 437, 440 (Iowa 1941) (citation omitted). This principle of law makes sense in light of the fact that many homeowners do not own their homes outright but instead have purchased them on contract or with a mortgage. If debtors had to own their homes outright to avail themselves of the homestead laws, the intended benefit of homestead laws would be greatly circumscribed.

*Lennert,* however, is distinguishable from the case at bar because the debtor in *Lennert* clearly had an equitable interest in the property that antedated the debt. There is

no equitable interest here because nothing in the Residency Agreement (or anything else antedating the debt for that matter) contemplated that the Takes would obtain fee simple title to the townhome. As in *Wertz*, the Takes' fee simple interest in the townhome was not a "continuation" or "consummation" of their leasehold interest. *See Wertz*, 39 N.W. at 104-15. The leasehold interest and the fee simple interest were entirely "independent" of one another. *Id.* Even though it turned out the Takes *happened* to continuously possess the townhome, they had no right to "compel" the sale before they incurred the debt to the Banks. *Id.* Indeed, the Iowa Supreme Court expressly distinguished the facts of *Lennert* from those of *Wertz* on this very basis. The court explained that the facts of the two cases were "vitally different" in one important respect: in *Lennert*, unlike *Wertz*, the record made clear that the father had agreed from the outset of the lease to convey fee simple title to the son at the father's death. *See Lennert v. Cross*, 215 N.W. 693, 693 (overruling petition for rehearing). It was inevitable that the son would take title at his father's death, so long as the son made yearly payments. *Id.* The same cannot be said of the case at bar. The homestead rights under which the Takes assert their exemption are not based upon a leasehold or an equitable estate, but rather the fee simple estate acquired when they purchased the townhome in 2004. The Residency Agreement and the Purchase Agreement are entirely separate and distinct legal documents, and nothing in the former contemplated the latter.

The Residency Agreement is plainly a lease and not, for example, a contract to purchase the land. Indeed, the Residency Agreement expressly refers to itself as a "lease," GPT as the "owner" of the townhome and the Takes as GPT's "tenants." While it is true the Residency Agreement does not consistently use magic words such as "landlord," "tenant," "lease" or "rent," the court must focus on the substance of the agreement, not magic words. "[N]o particular form of words is necessary to constitute . . . a lease and

create the relation of landlord and tenant between parties." *Putnam v. McClain*, 199 N.W. 261, 262 (Iowa 1924); *see also Lennert*, 241 N.W. at 789 (focusing on the substance of the parties' agreement and not their haphazard use of the term "rent"). What is important is that the Residency Agreement bears all the characteristics of a lease: exclusive possession of property for a period of time was exchanged for specified compensation. *See Robert's River Rides, Inc. v. Steamboat Dev. Corp.*, 520 N.W.2d 294, 300 (Iowa 1994) (defining lease), *abrogated on other grounds by Barreca v. Nickolas*, 683 N.W.2d 111, 116 (Iowa 2004). The Residency Agreement does not bear the characteristics of an equitable interest; for example, nothing in the Residency Agreement contemplated that the Takes would eventually obtain ownership of the property. *See M&I First Nat. Bank v. Episcopal Homes Mgmt., Inc.*, 536 N.W.2d 175, 186-87 (Wis. Ct. App. 1995) (concluding "residency agreement" was a lease).

The court recognizes there is one historically unusual aspect of this lease: the large entrance fee. Today, such fees are common when a long-term lease and a retirement community are involved. There are a number of cases involving similar leases. *See, e.g., Holy Spirit Ret. Home, Inc. v. Bd. of Review of the City of Sioux City,* 543 N.W.2d 907, 911 (Iowa Ct. App. 1995) (entrance fee ranged between $40,000 and $60,000); *Mayflower Homes, Inc. v. Wapello County Bd. of Review*, 472 N.W.2d 632, 634 (Iowa Ct. App. 1991) (entrance fee ranging from $18,000 to $50,000); *see also Eden Ret. Ctr., Inc. v. Dep't of Revenue*, 821 N.E.2d 240, 243-44 (Ill. 2004) (retirement community requiring "entrance fees" ranging from $65,000 to $76,900, as well as a $5000 "security deposit"); *Bethesda Barclay House v. Ciarleglio,* 88 S.W.3d 85, 94-95 (Mo. Ct. App. 2002) (retirement community charged nonrefundable "entrance fees" of up to $395,000); *Woodstown Borough v. Friends Home at Woodstown*, 12 N.J. Tax 197, 211-12 (1992) ("lease" requiring $40,000 "entrance fee"); *M&I First Nat. Bank*, 536 N.W.2d at 179

(retirement community charging entrance fees ranging from $19,800 to $77,250); *cf.* Iowa Code § 523D.1(4) (defining an "entrance fee" for certain retirement communities as "an initial . . . transfer to a provider of a sum of money . . . made . . . as . . . consideration for acceptance of a specified individual in a facility if the amount exceeds either . . . [$5000 or six months rent]"). Because of the greater risk associated with a long-term lease, landlords renting out properties for life often seek sizeable "entrance fees." These entrance fees are akin to security deposits for a short-term residential lease. *See, e.g. M&I First Nat. Bank,* 536 N.W.2d at 186-87 (concluding "residency agreement" was a lease and the "entrance fee" a security deposit; recognizing that while the security deposit was substantial it was "less daunting" given the length of the lease and potential obligations of the tenant upon termination because "the charges against the deposit could also be substantial"). For present purposes, it is enough to recognize that the Takes' entrance fee did not transform the parties' lease into a contract to purchase the townhome. Far from affording the Takes an equitable interest in the townhome, the payment of the entrance fee merely granted the Takes the right to enter into the lease. *See id.*; *see also Chapel View, Inc. v. Hennepin County*, No. TC-5686, 1988 WL 70657, *15 (Minn. Tax. June 29, 1988) (characterizing "admission warrant" of $17,000 as an entrance fee on a lease and holding such fee did not contemplate ownership of the property, but rather only "the right to enter").[10]

---

[10] It could be argued that the Takes had an "equitable interest" in the townhome in the sense that the amount of the entrance fee GPT would return to the Takes at the end of the lease depended in part upon the amount of the entrance fee the new resident would pay. While it is true the Takes could make a profit or incur a loss on their entrance fee depending upon market conditions, the value of the entrance fee would be "equity" in their leasehold interest, not an equitable interest in the fee simple property as contemplated in *Lennert*. Indeed, on closer inspection this aspect of the lease bolsters the conclusion that

(continued...)

Because the Residency Agreement and the Purchase Agreement were independent and the latter was not a "continuation" or "consummation" of the former, the court concludes the debt to the Banks antedates their current homestead interest in the townhome. *See Wertz*, 39 N.W. at 104-05; *Kramer*, 257 N.W. at 363; *Reusch*, 41 N.W.2d at 658. On this legal conclusion, the Bankruptcy Court shall be reversed.

### 3. Iowa Code § 561.20

The Banks apparently assume that if the Takes' debt antedated their current homestead interest in the townhome, the entire townhome is nonexempt. This assumption is not valid. There is an important difference between *Wertz*, *Kramer* and *Reusch* and the case at bar. In *Wertz*, *Kramer* and *Reusch*, the debtor obtained fee simple title through a subsequent gift or devise; in the case at bar, the Takes exchanged their leasehold interest for a fee simple interest. When the Takes made such exchange, they applied their refunded entrance fee to purchase the townhome. Because of this important difference, Iowa Code section 561.20, which was not at issue in *Wertz, Kramer* and *Reusch,* is relevant here.

As a preliminary matter, the court recognizes the parties did not specifically argue the applicability of Iowa Code section 561.20 in their briefs to the court. Nonetheless, the court concludes it has authority to consider this statute. An appellate court has "a responsibility to conform [its] decision to the law as [it] sees it." *Walker v. City of Kansas City, Mo.*, 911 F.2d 80, 92 n.17 (8th Cir. 1990) (citing *Pfoutz v. State Farm Mut. Auto. Ins. Co.,* 861 F.2d 527, 530 n.3 (1988)). Moreover, reliance on Iowa Code section 561.20 "raises no new issue in this case, but rather *suggests another theory to use in*

---

[10](...continued)
the Takes did not have an equitable interest in the townhome. GPT, as owner, retained "sole discretion" to determine the new resident and the amount of the new fee.

*resolving the issues raised by the parties.*" *Id.* (emphasis in original). The issue in this case is whether the Bankruptcy Court erred when it denied the Banks' objection to the Takes' claimed homestead exemption; this is a general question not limited to any specific section of Iowa Code chapter 561. The court notes that the Takes claimed their homestead right under a number of statutes, including Iowa Code section 561.20, in their petition.[11]

Iowa Code section 561.20 states:

> Where . . . a new homestead has been acquired with the proceeds of the old, the new homestead, to the extent in value of the old, is exempt from execution in all cases where the old or former one would have been.

Iowa Code § 561.20. Consequently, when a debtor acquires a new homestead after the debt was incurred but did so with the proceeds of a prior, exempt homestead, the new homestead is exempt from execution to the same extent as the old homestead. *See, e.g., Elliot v. Till,* 259 N.W. 460, 464 (Iowa 1935); *Am. Sav. Bank of Marengo v. Willenbrock,* 228 N.W. 295, 298 (Iowa 1929); *Harm v. Hale,* 221 N.W. 582, 583-84 (Iowa 1928); *Shaffer Bros. v. Cherynk,* 107 N.W. 801, 801-02 (Iowa 1906); *Richards v. Orr,* 92 N.W. 655, 656 (Iowa 1902); *Schuttloffel v. Collins,* 67 N.W. 397, 398-99 (Iowa 1896); *Mann v. Corrington,* 61 N.W. 409, 409-10 (Iowa 1894); *Thompson v. Rogers, Richardson & Co.,* 1 N.W. 681, 684-85 (Iowa 1879); *State v. Geddis,* 44 Iowa 537, 539 (1876); *Bills*

---

[11] Even if the issue were not raised for review, the court concludes it would still retain discretion to consider it. It is true a court sitting in an appellate capacity will not consider arguments not raised below. *See, e.g., In re Ozark Rest. Equip. Co.*, 850 F.2d 342, 345-46 (8th Cir. 1988). Nonetheless an appellate court may consider such a claim if (1) it involves a purely legal issue in which no additional evidence or argument would affect the outcome of the case or (2) manifest injustice would result. *Stalnaker v. DLC, Ltd.*, 376 F.3d 819, 824 (8th Cir. 2004). The court finds that application of Iowa Code section 561.20 is a purely legal issue and manifest injustice would result if it decided to ignore Iowa Code section 561.20.

*v. Mason,* 42 Iowa 329, 332-33 (Iowa 1876); *Benham v. Chamberlain & Co.*, 39 Iowa 358, 359-60 (1874); *Robb v. McBride*, 28 Iowa 386, 387-88 (1870); *Sargent v. Chubbuck*, 19 Iowa 37, 39-40 (1865); *Pearson v. Minturn,* 18 Iowa 36, 38-39 (1864); *Webster, Button & Call v. Saunders,* 8 Iowa 579, ___ (1858); *see also In re Allen*, 301 B.R. 55, 59-61 (Bankr. S.D. Iowa 2003) (recognizing same principle); *In re White*, 293 B.R. 1, 5 (Bankr. N.D. Iowa 2003) (same); *In re Streeper*, 158 B.R. 783, 788 (Bankr. N.D. Iowa 1993) (same).

As the Takes previously pointed out, it is well-established that a homestead right may exist in a leasehold.[12] *See, e.g., Kramer*, 257 N.W. at 364; *Livasy*, 170 N.W. at 756; *Perry v. Adams*, 162 N.W. 817, 820 (Iowa 1917); *White v. Danforth*, 98 N.W. 136, 137 (Iowa 1904); *Anderson v. Cosman*, 72 N.W. 523, 524 (Iowa 1897); *Pelan v. DeBevard*, 13 Iowa 53, 55 (1862). Because the Banks do not dispute that the Takes acquired their leasehold before they incurred the debt, the court must determine whether the Takes used any exempt "proceeds" from the leasehold to purchase the townhome. For the following reasons, the court concludes the Takes used some exempt proceeds to acquire the homestead, and therefore the Takes were partially justified in claiming their townhome exempt under Iowa's homestead laws.

The court must answer two questions. The threshold question the court must decide is whether the $110,000 entrance fee the Takes paid GPT in 1994 was part of their leasehold homestead. Although Iowa courts have not had occasion to consider whether a security deposit is part of the leasehold homestead, other courts have considered the question and have unanimously held it is part of the leasehold homestead. *See, e.g., In re Casserino*, 379 F.3d 1069, 1074-75 (9th Cir. 2004) (citing *In re Nagel*, 216 B.R. 397, 398

---

[12] Whether a lessee can claim a homestead tax credit is not at issue here. *See* Iowa Code § 425.11(4) (requiring claimant to own the property).

(Bankr. W.D. Tex. 1997) and *In re Quintana*, 28 B.R. 269, 270 (Bankr. D. Colo. 1983)).

Those courts have recognized that the lease and the deposit are not severable. *Id.* at 1074.

Payment of the security deposit entitles the lessee to enter the premises; the lessor's

continued retention of the deposit permits the lessee to remain in possession. *Id.*

Nonetheless, the lessee retains a legal right to the security deposit. *Id.* The deposit must

be returned to the lessee unless good cause exists under the parties' contract. *Id.* Indeed,

if the deposit were not exempt, it would produce a result in conflict with the homestead

laws:

> If landlords were required to turn over the leaseholder's
> deposits to the bankruptcy trustee, they would presumably
> demand from the debtor a replacement deposit that, in many
> cases, he or she could not pay and could not arrange for others
> to pay. A debtor who could not replace the security deposit
> would often face eviction. This outcome would completely
> subvert the homestead exemption's purpose of allowing the
> debtor to keep a roof over [his] head.

*Id.* at 1074-75. Given the liberality with which the Iowa Supreme Court interprets its

homestead laws, *see, e.g., Tolson*, 690 N.W.2d at 682, the court concludes the Takes'

leasehold homestead included the entrance fee. The homestead laws are not only designed

to encourage property ownership, but also to "preserv[e] a home where the family may be

sheltered and live beyond the reach of economic misfortune." *Id.* Consequently, before

the Takes purchased the townhome in 2004, their protected leasehold homestead included

the $110,000 entrance fee.

The next question is whether the entrance fee, when refunded and/or credited

towards the purchase of the townhome, was the "proceeds" of the leasehold as

contemplated in Iowa Code section 561.20. If so, the credited amount is exempt.

The court concludes the credited amount qualifies as "proceeds" of the leasehold,

and therefore the Takes' townhome is exempt up to the amount of $125,773. The Iowa Supreme Court has defined "proceeds" in Iowa Code section 561.20 as "that which is realized from some transaction such as a sale of property." *Millsap v. Faulkes*, 20 N.W.2d 40, 42 (Iowa 1945). When the parties ended their landlord-tenant relationship, $125,773 was "realized from [the] transaction." That is, the Takes received a credit for the $110,000 entrance fee plus appreciation at 1.5% per annum. Normal appreciation of an asset in the absence of proof of improvements designed to enhance its value is included in the "proceeds." *See, e.g., Shafer Bros.*, 107 N.W. at 801-02 (citing *Ebersole v. Moot*, 84 N.W. 696 (Iowa 1900)).

The court recognizes that Iowa Code section 561.20 is typically applied in the context of property sales, not the termination of a lease. The Iowa Supreme Court, however, has noted that the Iowa legislature's use of "proceeds" in Iowa Code section 561.20 is "one of equivocal import and of great generality . . . of loose and varying significance." *Millsap,* 20 N.W. at 42 (citing *Fardal v. Satre*, 206 N.W. 22, 25 (Iowa 1925)); *see also Atkinson v. Hancock*, 25 N.W. 701, 701-02 (Iowa 1885) (applying the statute outside the typical context of a sale to one in which an exchange took place); *Geddis*, 44 Iowa at 539 (rejecting claim that statute only applies when money changes hands; holding statute includes situations in which a sale is made on a credit). Nothing in Iowa Code section 561.20 limits its scope to the sale of homes. There is "no prescribed method" in the statute regarding how the debtor may change homesteads. *Geddis*, 44 Iowa at 539.

This construction of Iowa Code section 561.20 meshes with Iowa's homestead laws. A counterfactual example will prove instructive. Suppose the Takes had *not* purchased their townhome in 2004, but had instead continued to rent it pursuant to the Residency Agreement. What assets would be within the Banks' reach? Not the entrance fee. If the

court interpreted Iowa Code section 561.20 in any other way, it is clear the Takes would lose a considerable sum of money simply because they purchased the home they had previously rented. Such an interpretation would clearly conflict with a purpose of Iowa's homestead laws, which is to "encourag[e] property ownership and independence on the part of the citizen." *Tolson*, 690 N.W.2d at 682. It would also fail to recognize that the Takes had as much of a financial interest in their leasehold as do many homeowners in their homes. The undisputed evidence presented at the hearing in the Bankruptcy Court showed the Takes lived in homes for decades prior to the time they moved into their townhome, a place where they intended to live out their lives. If the court held entrance fees were not protected leasehold proceeds, residents of retirement communities like the Takes could never move because they would risk losing everything. Such a conclusion would undermine the purpose of Iowa Code section 561.20, which is to permit debtors to freely change their residences. *See Webster, Button & Call*, 8 Iowa at ___.

In the light of the foregoing, the court concludes that the Takes' townhome is partially exempt. The Takes' townhome is exempt to the extent they bought it with the proceeds of their prior leasehold—$125,773. Iowa Code § 561.20. That said, the law does not permit the Takes to use the change in homesteads to shelter nonexempt funds. One may not "substitute an inferior for a superior homestead, and hold the difference away from his creditors if the law can reach it." *Webster, Button & Call*, 8 Iowa at ___. The $51,527 in nonexempt funds the Takes used to purchase the townhome is not exempt. The Bankruptcy Court, which held that the townhome was entirely exempt, shall be reversed.

## VI.  CONCLUSION

IT IS ORDERED that the decision of the Bankruptcy Court is reversed.  The case is remanded to the Bankruptcy Court for further proceedings consistent with this opinion.

**SO ORDERED.**

**DATED** this 5th day of December, 2005.

LINDA R. READE
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA